Pearson, C. J.
The defendant sold a horse to the plaintiff ■with a warranty of soundness which was false. The-sale was ¡made on .Sunday, in the country, no one being present, except the parties and a witness. The defendant was a horse-trader, which was known to the plaintiff. The question is, can the -defondant defend the action because the sale was on Sunday?
The defense is pnt on the statute, Rev. Statutes, ch. 118, sec. 1. “That all and ev-ery person and persons whatsoever, •shall, on the Lord’s day, commonly called Sunday, carefully apply themselves to the duties of religion and piety, and that ao tradesman, artificer, planter,‘laborer, or other person whatsoever, shall, upon the land ©r water, do, or exereise any labor, business, or work, of their ordinary callings .(works of necessity and charity only excepted) on the Lord’s day aforesaid or any pari thereof, on pain, that every person *358 so offending, being of the age of fourteen years and upwards, shall forfeit and pay the sum of one dollar.” This-statute is taken from 29 Oar. 2, ch. 2, see. 1, which was enacted in this colony in 1741, a-nd re-enacted after the adoption of th-e-Constitution. My opinion is that the defense cannot be supported, and I put i't on on two- grounds :
I do not believe- the plaintiff comes within the operation: of the statute; Buying horses was not his “ordinary calling,”' so the statute d'oes not prohibit Min from doing so, or impose-any penalty upon him.
I admit that if a shop is kept open- on Sunday, or goods are-sold at auetion, the price cannot be recovered ; I also admit,, for the sake-of'th'e argument on this view of the ease, that the-defendant could not maintain an action- for the price of the 3-iorse. It is said the plaintiff linew the defendant was a horse-trader and concurred in his violation of the statute, and consequently, was partioeps-mminis. I>oes this- consequence-follow-? Iacrimes, there are accessories; in misdemeanors; all who-aid or concur are held to be equally guilty, and are-subject to like punishment with th-e-party who commits the-offense. This plaintiff is not guilty of violating- the- law, andi is not subjected to- a penalty,, so he cannot be partioeps orim.~ inis in tlie legal1 sense of the terms. He is no-t in-pari delicto7. and it is against the policy of the law, and will-defeat its object so to eonsidbr him-. The Court will no-t aid any persons who violates the law; therefore, the defendant c-ould not maintain an- action. This rule is- adopted' on the ground? of policy,., for the- purpose of preventing-a violation of the- law, and if' confined in its operation-to-the actual* offender, its application* will be salutary, but if it be-extended'to the party-who is not-an offender, so-far from- checking,- it will encourage a violation of it, by letting it be-known- to- “-horse-traders,”' “ shopkeepers” and “all whom it may e-onee-m,” that they may cheat with impunity, provided always, it may be don-e on tlie Xo7xTs day ! !' f The}»- will readily purchase “ this indulgence and dispensation” by paying “one- dollar;”' if it should; basiled for.
*359 If it be said this will prevent people from trading with them, the reply is, that is not the object of the statute, but to prevent “ tradesmen,” “ artificers, &c.,” from exercising their ordinary callings on Sunday, &c„,” so this action of the Court shifts the operation and fixes the burden on those not included, to the encouragement of those who are included in. the prohibition, and upon whom, alone, the penalty is imposed.
Our attention was called in the argument to a 2-emark of Bayley, Judge, in Bloxome v. Williams, 3 Barn, and Cress. 232, (10 E. C. L. Rep. 60.) In that case, the plaintiff did not lenow that the defendant was a horse-dealer, and it is held that he could 2-ecover, and the learned Judge incidentally says, “ if the plaintiff had known the defendant was a horsedealci’, such knowledge of the illegality of the contract would have prevented him from maintaining the action.” This was a mere dictum, not even called for‘in aid of the ai'gument. I cannot snppose that the learned Judge took time to consider of it, for he overlooks the fact, that the prohibition and the penalty apply to the defendant only.
In the second place, I do not believe a contract, like that under consideration, comes within the operation of the statute. A contract 2nade on Sunday, may be enforced by an action at co2nmon law. This is settled, Drury v. Defontaine, 1 Taunton, 130, in which it is decided that one, whose ordinary calling was to sell horses at auction, may recover the p2'iee of a horse sold on Sunday at private sale. The ordinary calling of the defendant was to sell hoi’ses at private sale, and I admit that this case co2nes within the words of the statute, although the sale was made in the country, where no oue was present except the parties and the witness. So the case of a Lawyei’, who sits in his room and reads a law-book, or writes a deed, or a merchant, who in his counting-room, posts his books, or an old lady, who sits by her fireside and knits, if done on Sunday, comes within the words of the statute. But my opinion is that the statute is void and inope2-ative in respect to cases of this kind, aud that its ope2-ation is confined fo manual, visible or noisy laboi-, such as is calculated to dis-
*360 turb other people; for example, keeping an open shop or working at a black-smith’s anvil, or crying an auction in a town. The Legislature has power to prohibit labor of this kind on Sunday, on the ground of public decency, and to prevent public devotion from being disturbed ; in the same way as the exhibition of animals, or the sale of spirituous liquor within a certain -distance of a religious assembly is prohibited. But when it goes further, and on the ground of forcing all persons to observe the Lord’s day, and carefully apply themselves to the duties of religion and piety on that day, prohibits labor which is done in private, and which does not offend public decency or disturb the religious devotions of others, the power is exceeded, and the statute is void for the excess, by force of the “ declaration of lights,” sec. 19 : “ All men have a natural and unalienable right to worship Almighty God according to the dictates of their own consciences.” Ours is a Christian country, but Christianity is not established by law, and the genius of our free institutions requires that “ church” and “State” should be'kept separate. In England, religion is established by law. The head of the-•church is the head of the State, and the statute 29 Oar. 2, has full force and effect. Here, there is a different condition of things, and only such part of the statute as is necesssary to enforce public decency is of force and effect. In Fennell v. Fidler, 5 Barn, and Cress. 406, (11 En. C. L. Rep. 261,) the case of a private sale, by a horse-dealer, on Sunday, is held to be within the operation of the statute, on the express ground that “ the spirit of the act is to advance the interest of religion, —to turn a man’s thoughts from his worldly concerns and to -direct them to the duties of piety and religion, and the act cannot be construed according to its spirit, unlesss it is so construed as to check the course of worldly traffic.” This is the language of Bayffiy, Judge, who, in the case of Bloxome v. Williams, supra, expressed a doubt whether the statute applies to a bargain of this description, and inclined to think “ that it applied only to manual labor and other work visibly laborious, and the keeping of open shops.” This was while *361 he was under the impression that the intention of the act was to promote “ public decency,” but afterwards, in Fennell v. Ridler, supra, upon further consideration, he expressed himself satisfied that “ there was nothing in the act to show that it was passed exclusively for promoting public decency, and not for regulating private conduct. Labor may be private and not meet the public eye, and so not offend against public decency, but it is equally labor, and equally interferes with a man’s religious duties.” So these two cases establish the po- * sitien, that considering the act as passed exclusively for promoting public decency, the case of a private sale would not come within its operation, and it was only b}r extending its object to the regulation of private canduct, and the enforcement of religious duties, that such a sale was brought within its operation ; this latter purpose is prohibited by our Constitution ; it follows that a private sale is not within the operation of the statute, so far as it can be allowed force and effect.
The cases cited from the New England States have no bearing. Their statutes prohibit all secular labor on the Sabbath, and the notions there entertained are far more strict and intolerant, than the sentiments that have heretofore prevailed in this State.
The general tone of State v. Williams, 4 Ire. Rep. 400, and Shaw v. Moore, 4 Jones’ Rep. 25, fully accords with this conclusion. In my opinion there is no error.
Manly, J. The defense raises two points : First, whether the transaction, as to either of the parties, was unlawful under the provisions of the Rev. Stat., c. 118 ; and, secondly, whether the plaintiff’s complicity was such as to deprive him of redress upon the contract, in case it was unlawful for the other. My opinion is adverse to the defense upon the first of these points.
The range of operation to be given to the statute, under the restraining influence of the Rill of Rights, embraces only the public conduct of the citizen and cannot be intended, or so construed, as to apply to his private conduct.
*362 This is inferable from several considerations, but mainly, as I think, from the uniform habits and customs of our people, putting, practically, this construction upon it, and from the omission on the part of the Legislature to exempt from the operation of the law, certain acts (neither of necessity nor charity) which we suppose it certainly would have done, if it had intended the law to apply generally to the class of cases to which they belong — such as cooking in private families, and in inns, and victualling houses — the work of a ferryboat, of coaches upon rail and other roads, and boats upon waters, in their ordinary calling. An absolute and entire suspension of all secular employment, which would be implied in the prevention of these, and in a strict construction of our statute, has never been supposed to be compulsory in any part of our country, except, perhaps, at one time in New England, by force of their peculiar laws. In North Carolina, it would be clearly contrary to the fundamental law to attempt an enforcement of that part of our statute which enjoins upon all persons a careful application of themselves, on the Lord’s day, to the duties of religion and piety. To enforce such an injunction, it must first be settled by the State, what specific duties are embraced in our obligations to God, and all men be then called upon to conform to the State ritual. This is forbidden by our Bill of Rights, (sec. 19,) and would be violative of religious freedom, without which, society could not be held together by the ties which at present bind it.
So, we are of opinion it is against the spirit of our legislation, and, therefore, not in the contemplation of the Assembly, to restrain the private conduct of the citizen whore there is no offense against1 public order and decency, and no disturbance of others in their proper observance of the day. At common law, the religious observance of Sunday has never been considered a duty of perfect obligation. This is true, even in England. Restraints, therefore, upon the conduct of the citizen on that day, is matter dependent upon express *363 legislative provision, and it would be against rule to extend these beyond the plainly expressed will of the Legislature.
I entertain no doubt, the Legislature of the State has the power, under the Constitution, to prohibit work on Sunday, as'a matter pertaining to the civil well-being of the community, and I am also well convinced there is nothing- more essential to the physical, social, and religious elevation of a people, than the institution of a weekly day of rest — a day set apart, especially, for recreation and for- the- worship of Almighty God. But this is not the point. It is, how far the 'Legislature has thought proper, actually, to- take-this matter in hand, in aid of the teachers of religion, and to-enforce, by law, the observance of Sunday. The leading idea in- the original framework of our government, an>d in the subsequent legislative and executive action under it, has been to leave-men as free as is consistent with safety — -to interfere no more with social liberty, by law, than is needful to secure order and the rights of each and every one. Outside of this, it is left to the individual citizen to govern himself — guided by the religious and moral teachings to which he is accustomed to resort, and lienee the spirit of individual responsibility, of independence and self-reliance, which is so remarkably characteristic of the American people-, and which has given such force and effect to our institutions. Of all the classes of human rights, those which belong to- conscience, in the worship of God, are held the most sacred. They cannot be touched without arousing pubic- attention and censure, and it is the last subject on which the State would resort to legislation, not actually needed for political safety and repose.
In view of these tilings, especially of the practical construction put upon the law by the usage of our people, from the beginning, (whieli is high- evidence of what was meant,) connected with the generality o-f the words used, I am of the opinion already stated, that it was not intended by our Legislature to act by the law wpon the private conduct of the citizen.
The transaction, out of which this controversy has arisen-, ■was, we suppose., (no-thing to the contrary being stated). prL *364 vate — between the parties, in tire presence of a single individual, the wetness, and was net, therefore, within the purview' of the statute.
The decisions in the other States of our country, which have ■ l^eon cited in the'discussion, may be supported upon the particular phraseology of their respective statutes, and the sense in which they have been accepted and practiced by our people, and from the general course of legislation in those States. I refer to the cases of Robeson v. French, 12 Metcalf, 24; Lyon v. Strong, 6 Verm. Rep. 214; Northup v. Foot, 14 Wind. Rep. 249 ; Speeht v. Com. of Penn. 8 Barr’s. Rep. 313 ; Bloom v. Richards, 22 Ohio Rep. 387 ; City Council of Charleston v. Benjamin, 2 Strob. Rep. (S. C.) 508. To the point of legislative power, some of the eases which I have examined, (where the States have similar constitutional provisions to our own) are germain to the case before ns, but upon the construction of our statute, (hey are not believed to be so. As my difficulty is not upon the former, but upon the latter question. Ido not derive any considerable aid from them.
The English cases cited are in exposition of the 29 Charles 2, ch. 7, and establish the conclusion (after doubts) that the statute was intended to operate upon the private conduct of the subject. The force of this conclusion, in its bearing upon, our case, is impaired by important differences between the statutes in the twrn cases, and by important differences in the constitutional power of the two governments, affecting the construction. The cases referred to are, Bloxome v. Williams, 10 E. Com. L. Rep. 60; Fennell v. Ridler, 10 Do. 261; Smith v. Sparrow, 13 Do. 351; Williams v. Paul, 19 Do. 192 ; Scarfe v. Morgan, 4 Mees, and Welsby (Ex.) 270. Two things are especially noticeable upon an examination of these cases: First, the doubts of the English Judges, whether the statute should have the more extended operation, and second, their reluctance to construe it so as to make void private contracts, especially those that bad been partly executed. It seems, however, that these difficulties were finally overcome by force of the special provisions of the statute, and by force, as I sup *365 pose, of the powers and general course of legislation in the country. It will be perceived, by reference to the statute at large, (29 Charles 2) that it has many provisions giving it an operation manifestly upon the personal and private conduct of the subject, which our extract from it has n'ot. And when this is considered, in connection with the spirit of their laws and the religious establishment, as part of that law, conclusions upon the respective statutes may be in opposite directions without any violation of principle in either. In England, there is a Christian ritual established by law, with parliamentary provisions for inculcating it privately and publicly, and a consequent right in the government to decide matters of faith and matters pertaining to established rites. In our State, there is nothing of the sort, with the single exception, that officers of the State mnst be Christians, there is no privilege or disability on account of religion. The State eo-nfesses its incompetency to judge in spiritual matters between men or between man and his Maker, and leaves in all a perfect religions liberty to -worship God as conscience dictates, or not to worship him at all, if they can so content themselves. Both peoples are equally Christian, and governed in their affairs, national and personal, alike, by the principles of Christian morality, but the one, through its government, deems it proper to cooperate with the ministers of religion in fostering and enforcing, — the other abjures all pow'er to interfere, and leaves spiritual matters exclusively in the hands of the teachers of religion. Hence, the English cases are not regarded as entitled to the weight of authority here. Their Judges are interpreting a different statute, in many important particulars, from that which we are called upon to expound. Their constitution and parliamentary powers and usages are different, and in the light of such differences, the same minds would probably come to different conclusions.
The defense is a novelty in North Carolina, and it has the singular demerit of being unconscientious, and at the same time, wearing a garb of Christian morality. I do not think it-■will do as the result of the construction of the statute as it *366 now stands. If it be the purpose of the Legislature by that statute to .prohibit acts of the class now before us, it is due to the great importance of the principle involved, and to the fact, that it is contrary to the general tenor of the legislation of the State, to express it unequivocally, and not to leave it •to a doubtful construction. Should the public will desire further provision of law upon the subject, it may be speedily put right in the next General Assembly by proper statutory enactments.
The view which is thus taken of the first point, makes it unnecessary for me to express an opinion as to the other, about which, I entertain some doubts. The anomaly of the case is, that the act is not prohibited alike to both parties. For one, it is not lawful; for the other, it is; unless he be affected by knowingly dealing with the first. It is a matter of doubt, whether mere knowledge on the part of the purchaser, puts him in pari delicto, and makes him amenable for the violation of the statute. Upon this point I decline expressing an opinion ; but being of opinion with the plaintiff upon the first, point, I think the judgment below should be affirmed.